### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA ODELL-GILL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CFCU COMMUNITY CREDIT UNION,<br><br>Defendant. | Civil Action No. __3:21-CV-1102 (FJS/ML)__<br><br><br>**JURY TRIAL DEMAND** |

### CLASS ACTION COMPLAINT

Plaintiff Jessica Odell-Gill, on behalf of herself and all others similarly situated brings this class action complaint against CFCU Community Credit Union, and alleges the following:

### INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, CFCU Community Credit Union ("CFCU" or the "Credit Union"), arising from its improper overdraft fee practices.

2.      First, CFCU charges "overdraft fees" ("OD Fees") on accounts that were never actually overdrawn, in breach of its contractual promises.

3.      Second, CFCU challenges the assessment and collection of unnecessary and futile Overdraft Transfer Fees ("ODT Fees").  CFCU charges accountholders OD Fees for transactions which purportedly overdraw an account. CFCU purports to charge ODT Fees to transfer funds from an accountholder's savings account to his checking account when doing so is necessary to avoid an OD Fee on the checking account. However, CFCU makes such transfers, and assesses such ODT Fees, even when doing so does not avoid an OD Fee on a checking account, causing

accountholders to pay <u>both</u> and ODT Fee and an OD Fees on a single transaction.

4.      These practices breach contractual promises made in CFCU's adhesion contracts.

5.      CFCU's customers have been injured by CFCU's improper practices to the tune of millions of dollars taken from their accounts in violation of their agreements with CFCU.

6.      On behalf of herself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

**PARTIES**

7.      Plaintiff is a citizen and resident of Dryden, New York.

8.      Defendant CFCU is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. CFCU has its headquarters in Ithaca, New York.

**JURISDICTION AND VENUE**

9.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of New York; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because CFCU is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I.     CFCU CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT**

A.    **Overview of Claim**

11.    CFCU issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

12.    Pursuant to its Account Documents, CFCU charges fees for debit card transactions that purportedly result in an overdraft.

13.    Plaintiff brings this cause of action challenging CFCU's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

14.    Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, CFCU immediately reduces accountholders checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. As a result, customers' accounts will always have sufficient available funds to cover these transactions because CFCU has already sequestered these funds for payment.

15.    However, CFCU still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

16.    Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, CFCU later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance.  These types of transactions are APPSN Transactions.

17.    CFCU maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to

account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, CFCU sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

18.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

19.     That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

20.     Still, despite keeping those held funds off-limits for other transactions, CFCU improperly charges OD Fees on those APPSN Transactions, although the APPSN Transactions *always* have sufficient available funds to be covered.

21.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

22.     There is no justification for these practices, other than to maximize CFCU's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But CFCU is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year. But CFCU was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

23.     Besides being unfair and unjust, these practices breach contract promises made in

CFCU's adhesion contracts—contracts which fail to inform accountholders about, and in fact, misrepresent, the true nature of CFCU's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

24.     In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that CFCU will only charge OD Fees on transactions that have insufficient funds to "cover" that debit card transaction.

25.     In short, CFCU is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

### B.     Mechanics of a Debit Card Transaction

26.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from CFCU. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to CFCU, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

27.     At this step, if the transaction is approved, CFCU immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

28.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which

may be up to three days after authorization, those funds may be unavailable for the
consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration,

Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

29.    Sometime thereafter, the funds are actually transferred from the customer's account

to the merchant's account.

30.    CFCU (like all credit unions and banks) decides whether to "pay" debit card

transactions at authorization.  After that, CFCU is obligated to pay the transaction no matter what.

For debit card transactions, that moment of decision can only occur at the point of sale, at the

instant the transaction is authorized or declined.  It is at that point—and only that point—when

CFCU may choose to either pay the transaction or decline it. When the time comes to actually

settle the transaction, it is too late—the financial institution has no discretion and must pay the

charge. This "must pay" rule applies industry wide and requires that, once a financial institution

authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand,

regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046

(Nov. 17, 2009).

31.    There is no change—no impact whatsoever—to the available funds in an account

when this step occurs.

C.    **CFCU's Account Documents**

32.    Plaintiff has an CFCU checking account, which is governed by CFCU's Account

Documents.

33.    Amongst the Account Documents which govern Plaintiff's relationship with CFCU

is a document entitled, Overdraft Services Consent agreement, which is page two to CFCU's

Discretionary Courtesy Pay Policy and attached hereto as Exhibit A. The Overdraft Disclosure

states:

> An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts in two different ways:
> 1. We have <u>standard overdraft practices</u> that come with your account.
> 2. We also offer <u>overdraft protection plans</u>, such as a link to a share/savings account or overdraft line-of-credit, which  may be less expensive than our standard overdraft practices. To learn more, ask us about these plans.

Ex. A, at 2 (emphasis added).

34.     The Overdraft Disclosure goes on to link authorization with payment:

What are the <u>standard overdraft practices</u> that come with my account?

> We <u>do</u> **_authorize and pay_** overdrafts for the following types of transactions:
> - Share drafts/checks, and other transactions made using your checking account
> - Automatic bill payments
> - ACH transactions
>
> We <u>do not</u> **_authorize and pay_** overdrafts for the following types of transactions unless you ask us to (see below):
> - ATM transactions
> - One-time debit card transactions
>
> We pay overdrafts at our discretion, which means we <u>do not guarantee</u> that we will always **_authorize and pay_** and any type of transaction.
>
> If we <u>do not</u> **_authorize and pay_** an overdraft, your transaction will be declined.

Ex. A at 2 (emphasis added).

35.     The Membership and Account Agreement ("Account Agreement") further links the moment of when the credit union "exercises its discretion" to pay an item with when an overdraft occurs:

> If we offer standard overdraft services, **this service allows us to _authorize payment for the following types of transactions_** regardless of whether your share or deposit account has sufficient funds: (1) share drafts/checks and other transactions made using your checking account, except as otherwise described below; (2) automatic bill payments; and (3) ACH transactions. For ATM and one-time debit card transactions, you must affirmatively consent to such coverage. Without your consent, the Credit Union may not **_authorize and pay_ an ATM or one-time debit**

8

**card transaction** that will result in insufficient funds in your account. If you have established a service linking your share or deposit account with other individual or joint accounts, you authorize us to transfer funds from another account of yours to cover an insufficient item, including transfers from a share or deposit account, an overdraft line-of-credit account, or other account you so designate. Services and fees for these transactions are shown in the document the Credit Union uses to capture your affirmative consent and the Schedule of Fees and Charges.

Except as otherwise agreed in writing, **if we exercise our right to use our discretion to pay such items that result in an insufficiency of funds in your account**, we do not agree to pay them in the future and may discontinue coverage at any time without notice. If we pay these items or impose a fee that results in insufficient funds in your account, you agree to pay the insufficient amount, including the fee assessed by us, in accordance with our standard overdraft services or any other service you may have authorized with us, or if you do not have such protections with us, in accordance with any overdraft payment policy we have, as applicable.

Account Agreement, Ex. B at 3.

36.     The Account Agreement further promises to immediately decrease an

accountholder's available balance by the amount of a hold:

Signature-Based Debit Card Purchase Transactions. These are purchase transactions using your debit card that are processed through a signature-based network. Rather than entering a PIN, you typically sign for the purchase; however, merchants may not require your signature for certain transactions. Merchants may seek authorization for these types of transactions. **The authorization request places a hold on funds in your account when the authorization is completed. The "authorization hold" will reduce your available balance by the amount authorized but will not affect your actual balance.** The transaction is subsequently processed by the merchant and submitted to us for payment. This can happen hours or sometimes days after the transaction, depending on the merchant and its payment processor. These payment requests are received in real time throughout the day and are posted to your account when they are received.

Ex. B at 4.

37.     For APPSN Transactions, which are immediately deducted from a positive account

balance and held aside for payment of that same transaction, there are always funds to "cover"

those transactions—yet CFCU assesses OD Fees on them anyway.

38.     The above promise means that transactions are only overdraft transactions when

they are authorized into a negative account balance. Of course, that is not true for APPSN Transactions.

39.     APPSN transactions are always initiated at the time the customer swipes the debit card when there are sufficient available funds in the account.

40.     In fact, CFCU actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions. Instead, it uses a secret posting process described below.

41.     All the above representations and contractual promises are untrue. In fact, CFCU charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that CFCU may impose OD Fees on any APPSN Transactions.

42.     The Overdraft Disclosure misconstrues CFCU's true debit card processing and overdraft practices.

43.     First, and most fundamentally, CFCU charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that CFCU will only charge OD Fees on transactions with insufficient available funds to cover a given transaction.

44.     CFCU assesses OD Fees on APPSN Transactions that ___do___ have sufficient funds available to cover them throughout their lifecycle.

45.     CFCU's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between CFCU's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

46.     Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

47.     Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what CFCU does when it re-debits the account during a secret batching posting process.

48.     In reality, CFCU's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

49.     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, CFCU cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

50.     Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, CFCU does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, CFCU releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

51.     This secret step allows CFCU to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which CFCU specifically set aside money to pay them.

52.     This discrepancy between CFCU's actual practices and the contract causes accountholders to incur more OD Fees than they should.

53.     In sum, there is a huge gap between CFCU's practices as described in the Overdraft

Disclosure and CFCU's practices in reality.

      **D.    CFCU Abuses Contractual Discretion**

54.    CFCU's treatment of debit card transactions to charge OD Fees is more than a breach of the express terms of the Account Documents. In addition, CFCU exploits contractual discretion to the detriment of accountholders when it uses these policies.

55.    Moreover, CFCU uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

56.    CFCU uses these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

      **E.    Plaintiff's Debit Card Transactions**

57.    As an example, on December 23, 2019, Plaintiff was assessed OD Fees for debit card transactions that settled on that day, despite the fact that positive funds were deducted immediately, prior to that day, for the transactions on which Plaintiff was assessed OD Fees.

      **F.    CFCU CHARGES ASSESSES ODT FEES ON FUTILE TRANSFERS**

58.    CFCU offers an overdraft protection and prevention service in which it transfers funds from other accounts held by accountholders to cover what would otherwise be overdraft transactions on a checking account. It charges a per-transfer fee of $10 for this service.

59.    The express purpose of the transfer service is to prevent overdraft transactions and reduce the incidence of $38 OD Fees.

60.    However, CFCU automatically performs these overdraft protection transfers, and charges a $10 fee for doing so, even where the transfer will be wholly futile—i.e., where the transfer will not actually allow the accountholder to avoid an OD Fee on his checking account.

61.     For example, on December 23, 2019, CFCU made an automatic overdraft protection transfer from Plaintiff's savings account to his checking account and charged her a fee of $10 for doing so. But that transfer did nothing to accomplish its supposed purpose, to prevent an OD Fee, since the  transfer was insufficient to fully cover the purported overdraft transaction. As such, Plaintiff still incurred an OD Fee of $38, in addition to the $10 overdraft protection fee on a transaction that settled to his account that day.

62.     CFCU's account documents deceive consumers regarding the fact that it may charge two separate fees—up to $48 total—for a single overdraft.

63.     The Account Agreement, Ex. B, states:

If you have established a service linking your share or deposit account with other individual or joint accounts, you authorize us to transfer funds from another account of yours to cover an insufficient item, including transfers from a share or deposit account, an overdraft line-of-credit account, or other account you so designate.

Ex. B.

64.     The entire purpose of the overdraft transfer is to "cover an insufficient item."  Yet the futile ODT Fees described above simply increase the total overdraft fees paid to $48 per transaction, not the $38 per transaction listed in the Fee Schedule. *See* Ex. C.

65.     Moreover, it was bad faith and totally outside Plaintiff's reasonable expectations for CFCU to use its discretion to transfer funds from another account—and assess a fee for doing so—when that transfer had no preventative purpose.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.  The proposed classes are defined as:

67.     Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated. The Classes are defined as:

> All accountholders who, during the applicable statute of limitations, were charged OD Fees on APPSN Transactions on a CFCU checking account.

> All accountholders who, during the applicable statute of limitations, were charged an overdraft protection transfer fee for a transfer that did not prevent an overdraft (the "Overdraft Transfer Fee Class").

> Plaintiff also brings her claims on behalf of subclasses of New York accountholders in the event the Court declines to certify a nationwide class.

68.     Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

69.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

70.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because CFCU has acted on grounds generally applicable to the class.  Such common legal or factual questions include, but are not limited to:

> a)      Whether CFCU improperly charged OD Fees on APPSN Transactions;

> b)      Whether CFCU improperly charged ODT Fees on futile transfers;

> c)      Whether the conduct enumerated above violates the contract;

d)      Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

e)      Whether the conduct enumerated above is a deceptive trade practice in violation of New York law;

f)      The appropriate measure of damages.

71.      The parties are numerous such that joinder is impracticable.  Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to CFCU's records.  CFCU has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

72.      It is impracticable to bring members of the Class individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

73.      Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by CFCU, as described herein.

74.      Plaintiff is a more than adequate representative of the Class in that Plaintiff is a CFCU checking accountholder and has suffered damages as a result of CFCU's contract violations. In addition:

      a)     Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

      b)     There is no conflict of interest between Plaintiff and the unnamed members of the Class;

      c)     Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

      d)     Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

75.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

76.    CFCU has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

77.    All conditions precedent to bringing this action have been satisfied and/or waived.

**COUNT ONE**
**BREACH OF CONTRACT INCLUDING THE**
**COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Individually and on Behalf of the Classes)**

78.    Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

79.    Plaintiff, and all members of the proposed Class contracted with CFCU for checking account services, including debit card services.

80.    CFCU breached promises made to Plaintiff and all members of the proposed class when as described herein, CFCU charged OD Fees on APPSN Transactions and charged fees for futile OD transfers.

81.    In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring

16

the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

82.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

83.     The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

84.     CFCU has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, CFCU should not have used its discretion to charge OD Fees on APPSN Transactions or on futile OD transfers.

85.     Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

86.     Plaintiff and all members of the proposed Class have sustained damages as a result of CFCU's breaches of the contract.

**COUNT TWO**
**New York General Business Law, N.Y. Gen. Bus. Law § 349 *et seq.***
**(On Behalf of the Class)**

87.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

88.     CFCU's practice of charging fees on APPSN transactions and futile OD transfers violates New York General Business Law § 349 ("NYGBL § 349").

89.     NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

90.     As a credit union with its headquarters and multiple branch locations in New York, CFCU conducted business, trade or commerce in New York State.

91.     In the conduct of its business, trade, and commerce, and in furnishing services in New York, CFCU's actions were directed at consumers.

92.     In the conduct of its business, trade, and commerce, and in furnishing services in New York, CFCU engaged in deceptive, unfair, and unlawful acts or practices, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

a.      CFCU misrepresented material facts, pertaining to the sale and/or furnishing of banking services to the New York Class by representing and advertising that it would only charge overdraft fees when an overdraft actually occurred and on transfers when an overdraft was actually prevented; and

b.      CFCU omitted, suppressed, and concealed the material fact that it would charge fees on APPSN transactions and on futile OD trnasfers.

93.     CFCU systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New York Class.

94.     CFCU willfully engaged in such acts and practices and knew that it violated NYGBL § 349 or showed reckless disregard for whether they violated NYGBL § 349.

95.     As a direct and proximate result of CFCU's deceptive trade practices, members of the New York Class suffered injury and/or damages, including assessment of OD Fees on APPSN transactions and on futile OD transfers.

96.     Had Plaintiff known she could be charged OD Fees on APPSN transactions and on futile OD transfers, she would have made different payment decisions so as to avoid incurring such fees or opted out of OD protection.

97.     As a result of CFCU's violations of NY GBL § 349, Plaintiff and members of the putative Classes have paid and will continue to pay excessive fees to CFCU.  Accordingly, they have suffered and will continue to suffer actual damages.

98.     Accordingly, Plaintiff and New York Class members are entitled to relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.     Certification for this matter to proceed as a class action on behalf of the Class;

B.     Declaring CFCU's OD Fee policies and practices to be in breach of its contract with accountholders;

C.     Restitution of all OD Fees and improperly assessed paid to CFCU by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

D.      Actual damages in an amount according to proof;

E.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

F.      For costs and attorneys' fees under the common fund doctrine, and all other applicable law; and

G.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  October 7, 2021                    Respectfully submitted,

By:*/s/ Jeffrey D. Kaliel*_____
    Jeffrey D. Kaliel (Bar Roll No. 518372)
    KALIELGOLD PLLC
    1100 15th Street NW, 4th Floor
    Washington, D.C.  20005
    (202) 350-4783
    *jkaliel@kalielpllc.com*

By:*/s/ Sophia G. Gold*_____
    Sophia Gold (Bar Roll No. 701241)
    KALIELGOLD PLLC
    950 Gilman Street, Suite 200
    Berkeley, CA 94710
    (202) 350-4783
    *sgold@kalielgold.com*

    *Attorneys for Plaintiff and the Putative Class*